IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01688-LTB

**PAUL GONZALES**,

    Plaintiff,

v.

**TERRY MAKEETA**, Sheriff, Colorado Springs Criminal Justice Center (CSCJC);
**SHERIFF**, (CSCJC);
**KITCHEN PERSONAL** [sic], Person in charge of CSCJC Food Perparation;
**MEDICAL PERSONAL** [sic], Person in Charge of CSCJC Medical Unit;
**MEDICAL PERSONAL** [sic], Person in Charge of CSCJC Reading and Responding to Medical Request;
**MEDICAL PERSONAL** [sic], Person in Charge of Making Decision to Insert Catheter; and
**EL PASO COUNTY ATTORNEY'S OFFICE**,

    Defendants.

## ORDER TO DISMISS

Plaintiff, Paul Gonzales, currently is in the custody of the Colorado Department of Corrections at the Sterling Correctional Facility. He was transferred there from the El Paso County Sheriff's Department sometime last year. Plaintiff initiated this action by filing *pro se* a Prisoner Complaint pursuant to 42 U.S.C. § 1983 and a Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915. Plaintiff has been granted leave to proceed IFP pursuant to § 1915 (ECF No. 6). On August 13, 2015, the Court ordered Plaintiff to show cause why his complaint should not be dismissed for failure to state a claim (ECF No. 7). Plaintiff has failed to respond to the Court's Order.

### A. Mandatory Screening and Standards of Review

In 1996, Congress significantly amended Title 28 of the United States Code, section

1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). *See Creamer v. Kelly*, 599 F. App'x 336 (10th Cir. 2015) ("Under §§ 1915(e)(2)(B)(i) and (ii), a court must screen a complaint filed IFP and dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious or fails to state a claim on which relief may be granted.") (internal quotation and citation mitted).

In addition, 28 U.S.C. § 1915A, entitled "Screening," requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

Further, the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e requires the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 42 U.S.C. § 1997e(c)(1).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28

U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 46. Moreover, Defendants are employees of a governmental entity. In addition, he is complaining about the conditions of his confinement. Thus, his Complaint must be reviewed under the authority set forth above.

In reviewing complaints under these statutory provisions, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations ... enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Bell Atlantic Corp.*, 550 U.S. at 555. When reviewing a complaint for failure to state a claim, the Court may also consider documents attached to the complaint as exhibits. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (internal citation omitted). Moreover, a legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). *See also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that a court may dismiss a claim as factually frivolous if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional). When reviewing a complaint for failure to state a claim, the Court may also consider documents attached to the complaint as exhibits. *Hall v. Bellmon*, 935 F.2d 1106,

1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.").

The Court must construe the Complaint liberally because Plaintiff is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). If a complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, a court should not act as a *pro se* litigant's advocate. *See id*. *Sua sponte* dismissal is proper when it is patently obvious that plaintiff could not prevail on the facts alleged and it would be futile to allow the plaintiff to amend. *Andrews v. Heaton,* 483 F.3d 1070, 1074 (10th Cir. 2007); *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (internal quotations omitted).

### B. Plaintiff's Allegations

On September, 2014, Plaintiff was in the Colorado Springs Criminal Justice Center (CSCJC) and received a letter from a Gastrointestinal Specialist informing him that he had tested positive for "Helicobacter Pylori" (know as "H").[1] Initially, Plaintiff was arrested on January 23, 2014, and taken to CSCJC where he was rejected entry by the Sheriff and, instead, was sent to Memorial Hospital in Colorado Springs. A blood test revealed that Plaintiff's ammonia and enzyme levels were high, which was the reason why he was

---

[1] Helicobacter pylori (H. pylori) is a type of bacteria that causes infection in the stomach. It is found in about two-thirds of the world's population. It may be spread by unclean food and water, but researchers aren't sure. It causes Peptic ulcers and can also cause stomach cancer. The best treatment is a combination of antibiotics and acid-reducing medicines. *See* NIH: National Institute of Diabetes and Digestive and Kidney Diseases.

delusional and unresponsive. Doctors and nurses at Memorial Hospital said Plaintiff needed to stop doing drugs because he had sclerosis of the liver. Plaintiff was discharged from the hospital and transported to CSCJC on January 25, 2014, and was booked in.

In mid-February, Plaintiff requested to be seen by the CSCJC medical staff due to stomach pain. Plaintiff was told his stomach pain was probably from gas or bloating and was prescribed medication; blood also was withdrawn. Plaintiff kept experiencing stomach pain and noticed that his stomach was expanding in size. He was told the reason his stomach was in pain was because of the sclerosis and he was advised to keep taking his medication.

From February to September, 2014, Plaintiff continued to experience stomach related pain and continued to make requests to CSCJC medical for treatment. During this time span, he went to Memorial Hospital about four times, including one surgery to remove his gallbladder. During his hospital visit for the removal of his gallbladder, a G.I. specialist asked if he could take a sample from the inside of Plaintiff's stomach. After his surgery, Jail officials put him back into the prisoner population. Immediately after, his stomach and testicles expanded in size. He notified CSCJC medical staff and they installed a catheter to drain the liquids out of his body.

On September 25, 2014, after concluding his criminal case in CSCJC, Plaintiff was transferred to the Denver Reception Diagnostic Center. During the intake process, he was informed that he needed to go to Denver Health immediately. He was transferred to Denver Health where the doctor observed his catheter and asked what the catheter was for. Plaintiff told the doctor that the catheter was placed by medical staff at CSCJC because, according to them, it would help drain the liquids out of his body, which was the

reason for the bloating. The Doctor at Denver said the catheter should not be there because it was not doing anything for his current condition and that it would have to be removed.

Plaintiff raises two claims in the instant Complaint. First, he claims that he contracted "H" while he was confined at the CSCJC due to their poor kitchen facilities and inadequate hygienic practices. Specifically, he states that he believes he contracted "H" through the food supply, which must have came in contact with fecal matter from rodents and/or prisoners not washing their hands after bathroom use. Second, he claims medical negligence by CSCJC Medical Staff, who did not treat his current medical conditions that he was suffering from. Plaintiff asserts liability pursuant to the Civil Rights Act, 42 U.S.C. § 1983. For the reasons stated below, the Complaint and the action will be dismissed pursuant to screening authority set forth above. The pertinent grounds which will result in the dismissal are addressed below.

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986). In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (internal quotations and

citations omitted). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id.*

Claims of denial of medical treatment by pretrial detainees are evaluated under the Due Process Clauses of the Fifth and Fourteenth Amendments, which prohibit the defendants from undertaking acts that amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In order to determine whether the challenged conditions of pre-trial confinement amount to punishment:

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose ... and whether it appears excessive in relation to [that] purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.

*Id.* at 538–39 (citations, brackets and internal quotations omitted).

The law is clear that a pretrial detainee is entitled to the same degree of protection against denial of medical attention that applies to convicted inmates under the Eighth Amendment. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). In this regard, the Eighth Amendment protects convicted prisoners against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. Specifically, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures

to guarantee the safety of the inmates."  *Famer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To state an Eighth Amendment violation in the context of medical treatment, an inmate must demonstrate two elements:  (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. *Gamble v. Estelle*, 439 U.S. 97 (1978).  The first showing requires the court *objectively* to determine whether the medical need was "sufficiently serious."  "[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.' "  *Martinez*, 563 F.3d at 1088 (quoting *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)).  "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation omitted).

The second prong requires the court *subjectively* to determine whether the officials acted with a sufficiently culpable state of mind.  Noting that this subjective standard lies "somewhere between the poles of negligence at the one end and purpose or knowledge at the other," *Farmer,* 511 U.S. at 836, the Supreme Court clarified the appropriate standard as follows.

> . . . We hold instead that a prison official cannot be found liable under the Eighth Amendment  for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth

> Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837–38.

Where the plaintiff's deliberate-indifference claim is premised on a delay in medical care, such delay "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)) (internal quotation marks omitted). This substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Moreover, while an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Constitution does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981).

Even assuming Plaintiff had a serious medical need, Plaintiff's allegations fall far short of establishing deliberate indifference, *i.e.*, that any Defendant acted with a sufficiently culpable state of mind. To establish the subjective component, a plaintiff must show that jail officials "knew he faced a substantial risk of harm and disregarded that risk, by failing

to take reasonable measures to abate it." *Farmer*, 511 U.S. at 837. Specifically, a jail official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "The question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?' " *Martinez*, 563 F.3d at 1089 (quoting *Mata*, 427 F.3d at 753.

Plaintiff's allegations simply do not show that any Defendant acted with deliberate indifference. Deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. The Supreme Court explained the difference between negligence and constitutional claims in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication.

Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> . . . Gamble was seen by medical personnel on 17 occasions spanning a 3–month period .... They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Gamble*, 429 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in *Gamble*, Plaintiff at bar has failed to demonstrate that he suffered a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. Plaintiff's own allegations indicate that he received substantial medical care during the entire time he was housed at the CSCJC. Moreover, the fact that he may have contracted "H" thru a food supply, which may or may not have came in contact with fecal matter from rodents and/or prisoners not washing their hands after using the bathroom, sounds, at most, only in negligence. In short, his allegations simply do not rise to a constitutional

violation.

In sum, there is no allegation that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it or that he had any reason to know that he faced any substantial harm. Accordingly, Plaintiff's section 1983 deliberate indifference/medical treatment claims will be dismissed. *Cf. Shue v. Laramie County Detention Center,* Civil No. 13–8064, 2014 WL 6807739, 4 (10th Cir. Dec. 4, 2014) (county officials were not deliberately indifferent to pretrial detainee's serious medical needs even if they delayed getting detainee medical treatment for leg injury following a slip and fall accident). Accordingly, it is

**ORDERED** that the Complaint and this action are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A and/or 42 U.S.C.A. § 1997e. It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Plaintiff files a notice of appeal he must also pay the full $505 appellate filing fee or file

a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, this   29th   day of   September   , 2015

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court